United States District Court
Southern District of Texas
**ENTERED**
January 26, 2016
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CASE NO. 2:15-CR-00643-01(S) |
| | § | |
| ANGELO CARLINN HOLMES, | § | |
| Defendant. | § | |

### ORDER AND MEMORANDUM OPINION DENYING THE
### DEFENDANT'S MOTION TO SUPPRESS

Before the Court are Defendant Angelo Carlinn Holmes's ("Defendant") Motion to Suppress (D.E. 18) and the Government's response (D.E. 20). On August 20, 2015, a federal grand jury returned a one-count superseding indictment (D.E. 11) charging the Defendant with possession with intent to distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). On October 28, 2015, the Court held a hearing to take evidence and to hear argument regarding the Defendant's motion to suppress (D.E. 18). Having carefully considered the supporting and the opposing memoranda, the arguments, the testimony, and otherwise being fully informed, the Court DENIED the Defendant's motion (D.E. 18) at the evidentiary hearing. The Court now submits this Order and Memorandum Opinion in support of its findings and its ruling.

### I.   FINDINGS OF FACT

On June 24, 2015, United States Border Patrol Agent Noe Hernandez ("Agent Hernandez") conducted an immigration inspection of a Greyhound passenger bus at the permanent United States Border Patrol checkpoint near

Falfurrias, Texas.[1]   The Defendant was a passenger on the Greyhound bus when Agent Hernandez boarded the bus to conduct a routine immigration inspection. Upon boarding the bus, Agent Hernandez made an announcement asking the passengers to have their identification ready for inspection.

Agent Hernandez began his inspection at the back of the bus, working his way to the front of the bus.  As Agent Hernandez walked toward the front of the bus, he came into contact with the Defendant.   Agent Hernandez testified that he first noticed the unusual, awkward position of the Defendant.  Agent Hernandez testified that the Defendant slouched over his seat—posture consistent with individuals attempting to hide contraband.  Agent Hernandez testified that the Defendant appeared nervous.  The Defendant's hands shook, he fidgeted in his seat, he avoided making eye contact with Agent Hernandez, and his voice cracked when speaking to Agent Hernandez.  Agent Hernandez asked the Defendant for his identification.   The Defendant did not have his identification out for examination.  Agent Hernandez testified that the Defendant replied "damn" as he reached for his identification, but complied by producing a Louisiana driver's license.  Agent Hernandez testified that he found the Defendant's responses and demeanor abnormal.

Agent Hernandez next asked the Defendant about his travel plans.  Agent Hernandez stated that the Defendant first said he was visiting family in Hidalgo. As Agent Hernandez examined the driver's license, he asked a second time

---

[1] Having been the focal point of decades of testimony and opinions, the Court is familiar with this checkpoint's location, purpose, and general activities.

regarding the Defendant's travel plans.   Agent Hernandez testified that the Defendant gave a different answer regarding travel plans.  Agent Hernandez stated that this time, the Defendant stated he was visiting friends in Edinburg.  Agent Hernandez testified that the Defendant's two stories regarding travel heightened his suspicion of smuggling contraband.  Agent Hernandez asked the Defendant to sit up straight and asked to inspect the area between the Defendant's back and the passenger seat, to which the Defendant complied.  Agent Hernandez testified that because the Defendant wore loose clothing, he was unable to inspect sufficiently the area.

Agent Hernandez testified that he then asked the Defendant to exit bus for additional investigation.[2]  Agent Hernandez testified that he asked the Defendant to exit the bus because he found the Defendant's answers inconsistent and he found the Defendant's demeanor suspicious, which led him to believe that the Defendant was involved in criminal activity.  After Agent Hernandez and the Defendant exited the bus, Agent Hernandez continued the investigation by asking the Defendant questions regarding luggage and if the Defendant was carrying any contraband or weapons.   The Defendant denied carrying any contraband or weapons.  Agent Hernandez testified that he next asked for and received consent from the Defendant to perform a pat-down search for officer safety.  During the pat-down, Agent Hernandez felt a bulge on the right side of the Defendant's leg. Agent Hernandez testified that the Defendant stated the bulge was "powder."  At

---

[2] The Defendant asserts in his motion, that Agent Hernandez "ordered" the Defendant to exit the bus.  At the evidentiary hearing, the Defendant presented no evidence contradicting Agent Hernandez's testimony.

3

this point in the investigation, Agent Hernandez handcuffed the Defendant and retrieved the "powder."  After being <u>Mirandized</u>, the Defendant gave subsequent inculpatory statements to the Border Patrol and the Drug Enforcement Agency.

## II.   <u>ANALYSIS</u>

The issue is whether Agent Hernandez acted outside the parameters of the Fourth Amendment.  The Defendant requests that all evidence seized or otherwise obtained be suppressed on the basis that it was obtained in violation of his Fourth, Fifth, and Sixth Amendment rights (D.E. 18, p. 1).[3]  The Defendant challenges the stop based on the following: (1) Agent Hernandez improperly seized the Defendant on the passenger bus; (2) Agent Hernandez impermissibly extended the scope and the duration of the immigration inspection by engaging in a drug investigation; and (3) the Defendant did not give effective consent to search (D.E. 18).   The Government argues that Agent Hernandez developed reasonable suspicion to extend the immigration stop and the subsequent pat-down search (D.E. 20).   The Government also argues that the Defendant's post-<u>Miranda</u> statements comply with the Fourth Amendment (D.E. 20).

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV; <u>see</u> <u>United States v. Portillo-Aguirre</u>, 311 F.3d 647, 652 (5th Cir. 2002).  Indeed, checkpoint

---

[3] While the Defendant briefly states that his motion to suppress is based on the Fourth, Fifth and Sixth Amendments (D.E. 18, p. 1), the Court only address the Fourth Amendment.  Counsel for the Defendant made no substantive Fifth or Sixth Amendment arguments in written motions or oral argument.

stops "are seizures within the meaning of the Fourth Amendment." <u>United States v. Martinez–Fuerte</u>, 96 S. Ct. 3074, 3080 (1976). <u>Martinez–Fuerte</u> held that "stops for brief questioning routinely conducted at permanent checkpoints are consistent with the Fourth Amendment and need not be authorized by a warrant." <u>Id.</u>  A Border Patrol Agent at a permanent immigration checkpoint may stop a vehicle, including a commercial bus, question its occupants about their citizenship, and conduct a visual inspection of the vehicle without any individualized suspicion that the vehicle or its occupants are involved in a crime. <u>U.S. v Ventura</u>, 447 F.3d, 375, 378 (5th Cir. 2006); <u>United States v. Portillo–Aguirre</u>, 311 F.3d 647, 651–52 (5th Cir. 2002).

While the public interest in routine checkpoint stops is significant, "[t]the scope of an immigration checkpoint stop is limited to…determining the citizenship status of the persons passing through the checkpoint[.]"  <u>United States v. Machuca–Barrera</u>, 261 F.3d 425, 433 (5th Cir. 2001).  The permissible duration of an immigration checkpoint stop includes the time necessary to inquire about citizenship status, request documentation, and request consent to extend the detention. <u>Id.</u> The immigration checkpoint stop may last no longer than necessary to fulfill its immigration related purposed. <u>United States v. Jaime</u>, 473 F.3d 178, 185–86 (5th Cir. 2006).   Thus, an immigration checkpoint stop exceeding its permissible scope violates the Fourth Amendment. <u>Machuca–Barrera</u>, 261 F.3d at 432.

A Border Patrol Agent may extend a stop based on sufficient individualized suspicion. Portillo–Aguirre, 311 F.3d at 653. If an officer's "initial, routine questioning generates reasonable suspicion of other criminal activity, the stop may be lengthened to accommodate its new justification." Id. at 654. Fourth Amendment violation occurs, unless the Border Patrol Agent has "individualized suspicion of a wrongdoing"—in other words a reasonable suspicion. City of Indianapolis v. Edmond, 121 S. Ct. 447, 451 (2000). Reasonable suspicion "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Gonzalez, 190 F.3d 668, 671 (5th Cir. 1999). Conversely, when a Border Patrol Agent detains a traveler after the legitimate justification for the stop ended, the continued detention violates the Fourth Amendment, unless reasonable suspicion develops or the individual gives consent. Id.

Border Patrol Agents "may request consent to extend the detention." Machuca–Barrera, 261 F.3d at 433; see United States v. Ross, 102 S. Ct. 2157 (1982). United States v. Tedford, 875 F.2d 446, 451-452 (5th Cir. 1989) (citations omitted), articulates the following factors when determining whether a defendant effectively consented to a search under the Fourth Amendment:

> (1) the voluntariness of a defendant's custodial status; (2) the presence of coercive police procedure; (3) the extent and level of a defendant's cooperation with the police; (4) a defendant's awareness of his right to refuse consent; (5) a defendant's education and intelligence; and (6)  a

defendant's belief that no incriminating evidence will be found. All of these factors are relevant, but none of the six is dispositive.

If a defendant consents to a search, that consent may be invalid if given under an illegal detention and no circumstances intervened between the detention and the consent. Jamie, 473 F.3d at 182. If the government relies upon consent "to justify the lawfulness of a search," then the burden of proving voluntary consent falls on the government. Schneckloth v. Bustamonte, 93 S. Ct. 2041, 2045 (1973) (internal citations and quotation marks omitted).

In this case, the Court finds that Agent Hernandez lawfully seized the Defendant, and the Court finds that Agent Hernandez developed reasonable suspicion to justify extending the immigration stop. Initially, Border Patrol Agents stopped the Greyhound bus at the Falfurrias checkpoint for a permissible, suspicionless immigration inspection. Agent Hernandez boarded the bus to check identification documents and briefly question the passengers about their immigration statuses. The Court looks at the "totality of the circumstances" when determining whether "the detaining officer had a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 122 S. Ct. 744, 750 (2002). Both the Government and the counsel for the Defendant questioned Agent Hernandez extensively regarding his field training and his personal knowledge regarding the Falfurrias checkpoint and narcotics smuggling activity in the area. The Defendant argues that Agent Hernandez impermissibly extended the

immigration stop in violation of the Fourth Amendment because Agent Hernandez failed to develop reasonable suspicion of criminal activity (D.E. 18, p. 5).

As Agent Hernandez briefly questioned the Defendant regarding his immigration status, he developed reasonable suspicion to continue detention to investigate non-immigration matters. In support of further detention beyond the immigration stop, Agent Hernandez articulated the following supporting facts: (1) the Defendant's unusual, awkward position in his seat on the passenger bus; (2) the Defendant's abnormal response to check identification; (3) the Defendant's inconsistent stories regarding travel plans; and (4) the Defendant's nervousness and shifting posture. Furthermore, Government agents may draw reasonable inference from the facts of each case in light of that agent's experience. United States v. Pack, 612 F.3d 341, 352 (5th Cir. 2010). When Agent Hernandez finished the brief questioning inside the bus, he had no doubt about the Defendant's status as a United States citizen. Agent Hernandez, like the agent in Machuca-Barrera, reasonably believed that the Defendant was smuggling contraband, possibly narcotic drugs. Hernandez articulated specific details regarding the Defendant's behavior warranting further investigation.

Machuca-Barrera makes clear that when the initial, routine questioning generates reasonable suspicion of other criminal activity (here, narcotic drug smuggling) warrants further investigation. The Court finds that Agent Hernandez's testimony and the totality of the evidence presented, established the

reasonable suspicion necessary to question the Defendant about non-immigration matters beyond the permissible length of the immigration stop.

Lastly, the Defendant argues that any consent to search was invalid because Agent Hernandez conducted an illegal detention with no intervening circumstances (D.E. 18, p. 8). As previously stated, the Court finds that Agent Hernandez's reasonable suspicion of criminal activity developed during the permissible duration of the routine immigration stop; therefore, no illegal detention occurred. There is no indication, based on the facts in the record and the testimony at the evidentiary hearing, that Agent Hernandez questioned the Defendant for more than a few minutes before he asked the Defendant to exit the bus. Thus, the Court finds that Agent Hernandez did not conduct an illegal detention in violation of the Fourth Amendment to negate the Defendant's consent.

Upon balancing the six factors set forth in Tedford, the Court finds that the Defendant effectively consented to the search. Although, it is not apparent if Agent Hernandez advised the Defendant of his right to refuse to exit the bus and his right to refuse the pat-down search, "apprising a suspect of the right to refuse consent is not required to render consent voluntary." United States v. Gonzales, 842 F.2d 748, 755 (5th Cir. 1988) (overruled on other grounds, United States v. Hurtado, 905 F.2d 74, 75 (5th Cir. 1990) (holding that government's burden of proof is preponderance of the evidence, citing United States v. Matlock, 94 S. Ct. 988 (1974)); United States v. Sutton, 850 F.2d 1083, 1085 (5th Cir. 1988). No

evidence suggested that Agent Hernandez employed coercive procedures, such as brandishing a weapon, and no evidence suggested that consent had been withdrawn.   There is no evidence that the Defendant lacked the necessary education or intelligence to understand the situation and consequences of his consent to a search.   Agent Hernandez testified that he asked the Defendant to follow him off the bus, which the Defendant complied.   Agent Hernandez further testified that he performed the pat-down search, after requesting and gaining consent from the Defendant.   Viewing the totality of the circumstances with the factors articulated in Tedford, the Court finds that the Defendant gave effective consent to the pat-down search.

## III.   CONCLUSION

Based on the aforementioned reasons, the Court DENIES the Defendant's motion (D.E. 18).


ORDERED this **26** day of January, 2016.



*Hayden Head*

HAYDEN HEAD
SENIOR UNITED STATES DISTRICT JUDGE